UNITED STATES *v.* MALHAME & CO., CHARLES HAPPEL
(MALHAME & CO.) (No. 4682)[1]

United States Court of Customs and Patent Appeals, November 7, 1951

David N. Edelstein, Assistant Attorney General (Joseph F. Donohue, Daniel I. Auster, and Richard F. Weeks, special attorneys, of counsel), for the United States.

Sharretts, Hillis & Paley (Howard C. Carter and Edward P. Sharretts of counsel) for appellees.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

The Government here seeks reversal of the judgment of the Third Division of the United States Customs Court entered in accordance with its decision (Reap. Dec. 7965, 26 Cust. Ct. 558) affirming that of the single judge (Reap. Dec. 7750, 23 Cust. Ct. 290) sitting as a trial court in a reappraisement proceeding involving the dutiable value of leather-bound prayer books imported from Antwerp, Belgium.

A large number of importations, all presenting substantially the same issue, are involved. They were embraced in a list designated as "Schedule A," and from another schedule, identified in the record as "Schedule B," it appears that the importations were made during a period beginning in 1930 and continuing up to sometime in 1940.

All are subject to the provisions of the Tariff Act of 1930.

The following historical recital is taken from the brief on behalf of appellees before us:

The issue presented by this appeal was originally before this Court in United States v. Malhame & Company, 24 C. C. P. A. (Customs) 448, T. D. 48911. This Court reversed the judgment of the Customs Court insofar as it related to leather bound prayer books and remanded the case for further proceedings consistent with the views expressed in the opinion. The Court held that proof of the cost of production of the leather bindings and the texts in terms of a percentage of the total cost of production of the leather bound book was insufficient where the constituent parts of the statutory cost of production were not separately shown.

After receipt of the mandate of this Court, the Customs Court remanded the case to a single judge 'for the purpose of permitting the parties to introduce evidence to establish the cost of production of such books, if such evidence is available.' The Government (appellant therein) appealed from this judgment and this Court affirmed the judgment on remand in United States v. Malhame & Company, 25 C. C. P. A. (Customs) 423, T. D. 49497.

However, conditions in Europe were so unsettled that it was impossible to secure further evidence at that time. The original appeal to reappraisement was dismissed in Malhame & Company v. United States, 6 Cust. Ct. 724, R. D. 5090. The appeals to reappraisement involved in this appeal had been suspended under the Rules of the United States Customs Court pending the final decision in the test case. Subsequently, these appeals to reappraisement were suspended for

the duration of the war. When the cases again appeared on the calendar of the United States Customs Court, the trial of the action was had.

In the decision of the single judge, it is said:

In some of these appeals the merchandise was entered at certain unit values which were advanced by the appraiser, but in the majority of the appeals the merchandise was entered under duress to meet advances made by the appraiser in similar cases then pending on appeal. The merchandise was appraised on the basis of *United States value* as entireties, and in some of the appeals the appraiser also indicated separate values for the bindings and for the printed pages. (Italics supplied.)

This means, of course, that the appraisement was made upon the basis of United States value as that term is defined in paragraph (e) of section 402 of the Tariff Act of 1930. The full text of that paragraph reads:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The claim on behalf of the importers is for appraisal on the basis of cost of production as that term is defined in section 402, paragraph (f), of the 1930 act, reading:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It having been stipulated at the trial before the single judge that there was no foreign or export value for the merchandise as those terms are defined in section 402 (c) and (d) of the tariff act, no consideration of those values was necessary and, of course, none is required here.

So, broadly, the issue lies between United States Value and Cost of Production as those terms are defined by statute.

More specifically, it logically should be determined first whether, *as a matter of law*, the merchandise had a United States value as that term is defined in paragraph (e) of section 402 hereinbefore quoted.

Should it be found to have such value, it is our view that such finding would be conclusive of the case, because we think the values found by the appraiser, either as entireties or separate entities, would be presumptively correct *under that theory of the law*, and we find no evidence whatever which tends to overcome such presumption.

If, however, it be found as a matter of law that the merchandise did *not* have a United States value as defined in paragraph (e), *supra*, then, obviously, upon the record here presented, cost of production as defined in paragraph (f), *supra*, becomes the valuation criterion, and the claim of appellees thereunder is properly sustainable, provided any substantial evidence appears in the record in support of the various elements or items named in paragraph (f), *supra*, as being required to make up cost of production.

If there be no substantial evidence in support of *all* such elements, the duty would rest upon this court, under the well settled authorities, of reversing the judgment agreed to by both tribunals of the Customs Court. Just what result such an action might lead to may be uncertain in view of our decision in the case of *United States* v. *Malhame & Company* (Suit No. 4136), 25 C. C. P. A. (Customs) 423, T. D. 49497, hereinafter referred to, but, in view of our conclusion respecting both the applicability of section 402 (f) and the question of substantial evidence, it is unnecessary to speculate about the result.

As has been indicated, the single judge, sitting as a trial court, and the appellate division were in entire agreement upon every detail discussed and every finding made in their respective decisions. From the decision of the latter, we quote the following:

Upon this record the trial judge found that the weight of the evidence established the cost of production for the text and the bindings, separately, for the leather-bound books. We think he arrived at the right conclusion for the proper reasons stated. From a consideration of the record we find that there is substantial evidence to support his finding.

We therefore find as facts:

(1) That the merchandise in question consists of leather-bound prayer books exported from Antwerp, Belgium, during the years 1930 to 1940.

(2) *That the leather bindings and the text are not sold or offered for sale separately in the United States.* [Italics supplied.]

(3) That during the period of 1930 to 1940 the identical books were being offered for sale as entireties at the appraised values thereof in each instance, in the United States.

As a matter of law we conclude:

(1) That for the period involved there was neither a foreign nor an export value for these leather-bound books.

(2) That inasmuch as the ruling of the Court of Customs and Patent Appeals herein cited requires that separate values be found for the bindings and for the text of these books, and the record discloses that at or immediately prior to the dates of exportation the bindings and text were not freely offered or sold separately in the United States, there is no United States value for the books as such.

(3) That the proper basis for valuation of the leather-bound books here involved is the cost of production of the bindings and of the text, separately, and that such values are those set forth in schedule "B", hereto attached and made part hereof, which values include packing.

In the decisions by the respective tribunals of the Customs Court, different decisions of this court were cited and followed and those are relied upon here by counsel for appellees.

The first case—in a sense the leading case—cited is that of *United States* v. *John Wanamaker*, 20 C. C. P. A. (Customs) 381, T. D. 46185.

Two cases respecting leather-bound books were there involved and they arose under the Tariff Act of 1922 by protests against the collector's classification. The protests so differed in phraseology that a majority of the court deemed it necessary to consider them separately and this was done, one of the protests being sustained and the other overruled.

In both instances, the protests raised the question of the validity of the appraiser's valuation in treating the books as entireties, and in respect of at least one of the protests determination of that question was necessary to our decision.

So, in our opinion, which was written by the late Judge Bland (see 20 C. C. P. A. (Customs) 381, 386) it was expressly declared: "Since the appraisement was made on the books as entireties it is at once apparent that such appraisement is invalid and void, * * *."

The reasoning upon which that conclusion was based was the same as that well stated by the single judge in his decision in the instant case:

As to the leather-bound books here in issue which were appraised as entireties, I consider the *Wanamaker* decision, *supra*, controlling. By virtue of said decision, these appraisements would seem to be invalid and void. It accordingly is clear that the presumption of correctness cannot attach to them. By the same token neither can there be any United States value for the books where the bindings and texts were appraised separately, for the reason that it has been agreed between counsel that the leather bindings are never sold or offered for sale separately

from the texts in the United States, nor are the texts ever sold or offered for sale separately from the bindings in the United States. *There is, therefore, no United States value for the involved books, whether appraised as entireties or whether the texts and bindings are appraised as separate entities.* [Italics supplied.]

The first element named in section 402 (e), *supra*, as being an item requisite to United States value is the *price* at which such or similar *imported* merchandise is freely offered for sale.

In the brief for the Government in the instant case, it is pointed out that in the decision of the *John Wanamaker* case, *supra*, the late Judge Graham joined with Judge Bland: that there was a specially concurring opinion by the late Judge Lenroot; and that there was a dissent in part by the late Judge Hatfield in which the writer of the instant opinion concurred.

While that is correct, there was no expression by any judge of any view different from that just quoted from the decision written by Judge Bland.

From a careful study of the opinion by Judge Hatfield dissenting in part, in which the writer of the instant opinion concurred, it will be seen that the dissent resulted from their view that the importer was entitled to relief in both cases.

The specially concurring opinion of Judge Lenroot expressed disagreement with the holding that *in a protest case* where an appraisement by the local appraiser is found to be void, "the matter might be regarded as * * * pending before the local appraiser" with the result that a new appraisement might be made by that official.

It may be noted that Judge Lenroot obviously concurred with all the other judges in the holding that the appraisement of the local appraiser was void and that his view relating to a new appraisement was confined to protest cases.

In this connection, it may be said that the brief for the Government in the instant case seems to take the view that since the *Wanamaker* case, *supra*, was a protest case the decision there should not be regarded as controlling here since this is a reappraisement case.

We have not agreed with that view in the past.

In the *reappraisement* case of *United States* v. *Malhame & Company* (Suits Nos. 4001 and 4005), 24 C. C. P. A. (Customs) 448, T. D. 48911, one of the issues involved related to the dutiable value of the same character of merchandise (leather-bound prayer books) as that involved here.

Upon that issue the decision of this court, which was written by Judge Lenroot and unanimously agreed to by all the judges participating, it was stated, *inter alia* (see 24 C. C. P. A. (Customs) 452):

With respect to the finding of value of the leather-bound books it appears that, following our decision in the case of *United States* v. *Wanamaker, supra,* the lower

tribunals held that the texts and bindings should, under the provisions of paragraph 1410 of the Tariff Act of 1930, be separately appraised; that there was no foreign, export, or United States value for the leather bindings or the pages of the text in the imported condition, and therefore these should be appraised upon the basis of the cost of production of binding and text, considered separately.

It was stated further that the Government there assigned error upon the point of separate appraisal of binding and text and also with respect to the court's findings as to cost of production. We declared: "We will first consider the question of whether there is any substantial evidence in the record of the cost of production of the leather-bound books."

This we proceeded to do. We stated that the only evidence upon the point consisted of the affidavit of Joseph H. Proost who stated that he was a co-director of the organization or company by which the there involved books were exported from Belgium. We quoted the affidavit and pointed out that it contained nothing "separately showing items (1), (2), (3), and (4)" of section 402 (f) of the Tariff Act of 1930.

We then cited as controlling our decision in the case of *Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767, and held that the court erred in its decision relative to the cost of production "because there is no substantial evidence in the record tending to establish, in the manner provided by law, such cost of production."

We did not consider there any of the other assignments of error presented by the Government respecting the leather-bound books. So, in fact, there was no direct expression by us relative to the applicability of the cost of production valuation, but, we think, from the several references to the decision in the *John Wanamaker* case, *supra*, that the principle stated therein was implicit in the decision in the *Malhame* case, *supra*.

However that may be, we there remanded the case to the Customs Court "for further proceedings consistent with the views" therein expressed, and upon receipt of our mandate, the court, reciting that the local appraiser's appraisement had been shown to be clearly wrong because he returned the books as entireties, entered a judgment remanding the case to the trial court for the purpose of permitting the parties to introduce evidence to establish cost of production if such evidence should be available.

The Government appealed from that judgment and we sustained the action of the Customs Court. See *United States* v. *Malhame & Co.*, 25 C. C. P. A. (Customs) 423, T. D. 49497, wherein all the pertinent facts are recited.

We have examined with care the extensive and closely reasoned brief filed by the Government in the instant case, but we are not

convinced that there was error in our decision in the *John Wanamaker* case, *supra*.

That decision was rendered January 23, 1933. The principle therein stated, we think, has been implicit in every pertinent decision of this court, as well as in every pertinent decision of the Customs Court, rendered since that date. Its correctness has not been brought in question heretofore. So, as stated in the brief for appellees, "This decision has been the settled law of the land for more than eighteen years."

We are confident that application of the principle defined in the *John Wanamaker* case, *supra*, works no injustice to either the Government or to importers, and we can discern no reason for concluding that legislative intent is violated by such application. Our view is to the contrary.

The remaining question is whether there is any substantial evidence to support the valuation claimed by the importers upon the basis of cost of production as defined in section 402 (f), *supra*.

In the *Malhame & Co.* case (Suits Nos. 4001 and 4005), *supra*, reported in 24 C. C. P. A. (Customs) 448, T. D. 48911, it was held by us that there was no substantial evidence to support such a valuation because there was none whatever to support four of the elements or items named in section 402 as entering into the cost of production.

It was found by both tribunals of the Customs Court that the defect in proof in that case had been met in the instant case by the affidavit of one Adrianus Cornelius Josephus Proost, which reads as follows:

I am a co-director of Henri Proost & Co. of Turnhout, Belgium, and I am personally familiar with all of the prayer books sold by my company to Malhame & Co. of New York City, and shipped to said purchaser from 1930 to 1947. I am personally familiar with the descriptions on the invoices of the payer books shipped to Malhame & Co. by my company during this period. All of the books described by their appropriate item numbers in the schedule annexed hereto, and made a part hereof, were manufactured by my company. I am personally familiar with and have direct supervision of the manufacture of these books and I am personally familiar with all costs incident to their manufacture, including the cost of materials, fabrication, manipulation and other processes employed in their manufacture and the usual general expenses and profits. All records are and have been always kept under my supervision. All of my records prior to 1941, except for the year 1935, do not exist any more. It is my distinct recollection, confirmed by the records of 1935, that the usual general expenses amounted to 33⅓% of the cost of materials, fabrication and manipulation, and the profit amounted to 16⅔% of the cost of materials, fabrication and manipulation, and that the invoice price represents the total of the cost of materials, fabrication and manipulation, usual general expenses and profit in every instance.

In the schedule attached hereto, and made a part hereof, the various leather bound books shipped by my company to Malhame & Co. during the period specified are listed. Each description on said schedule is indicated by the text number

and binding number as they appear on the consular invoices, the separate cost of materials, fabrication, manipulation or other processes employed in manufacturing the text and the binding, general expenses attributable to each text and binding, packing charges prorated for each text and binding and a profit for each text and binding, as explained heretofore. As a part of my business it is necessary for me to know the profit made by my competitors. To the best of my knowledge and belief, the profit added to make our selling price is at least equal to the profit which ordinarily is added in the case of books of the same general character as the books sold by my company, by other manufacturers in Belgium.

At no time during the years above specified was the leather binding of any of the books herein referred to sold or offered for sale in Belgium or for export to the United States or other countries separate from the text, nor was the text sold or offered for sale separate from the binding. To the best of deponent's knowledge and belief, no other manufacturer or dealer was either selling or offering for sale during the period in question leather bindings of this character separate from the text or the text separate from the bindings.

After quoting the affidavit, the court continues:

Attached to this affidavit is a schedule in which are set forth the reappraisement number; consular invoice number and year; case number; item and number; cost of materials, fabrication, manipulation per book; overhead per book; cost of packing per book; profit per book; and the total cost of production per book. The schedule sets forth separate costs for the text and binding per item for the above-enumerated costs and profit, and the total cost of production is also given for both the binding and the text.

It is noted that the affiant states that, except as to the year 1935, the records prior to those of the year 1941 are no longer in existence. He further states the percentages applicable for general expenses and profit and that the invoice price represents the total of the cost of materials, fabrication, and manipulation, usual general expenses, and profit in every instance. These statements are based upon his recollection which is confirmed by the records for 1935. At first impression, it would seem that a compilation of the amounts of the items entering into the cost of production of such a vast number of items as are here involved, in the absence of records except for 1 of the 10 years involved, would be an impossible task and ordinarily we would so hold. However, in the case at bar the evidence indicates that the affiant is personally familiar with all costs incident to the manufacture of these books and that all records have always been kept under his supervision; further, that there is not an unusual variance in the percentages allowed by this firm and other manufacturers of merchandise of the same general character from year to year. It is the duty of the appraiser and the court in arriving at the amount to be allocated for profit to consider not only the profits of the manufacturer of the imported merchandise, which is not the sole criterion, but other evidence of record as to profits ordinarily made by other manufacturers of merchandise of the same general character and the amount of profit should be determined according to the weight of all the evidence. *United States* v. *Henry Maier,* 21 C. C. P. A. (Customs) 41, T. D. 46378.

The proof produced on behalf of the appellant, consisting of the three reports of the Treasury attache, are likewise based upon the only reports available, those for the year 1935. We are in accord with the finding of the judge below that—

    * * * In many respects the evidence contained in these reports is not out of line with the evidence offered by the plaintiffs [appellees], and in those respects in which the evidence contained in said reports is not in

accord with that offered by the plaintiffs, it is not of sufficient probative value to overcome the *prima facie* case which plaintiff's evidence establishes.

While it is a province and duty of this court to determine in a reappraisement proceeding whether there is any substantial evidence to support a finding, that being a question of law, it is not within this court's jurisdiction to weigh conflicting evidence, nor do we usually consider or pass upon the credibility of witnesses in such cases.

The statute makes provision for the admission of affidavits such as that which was filed in this case. It would be a foolish thing to provide for their admission without intending that they should be treated as evidentiary in character.

So treated the affidavit is substantial evidence on all material points.

We must decline to hold that the Third Division of the Customs Court erred in its affirmance of the holding of the trial court.

Upon the contrary, the judgment here appealed from is *affirmed.*